**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

DAVID DAVON GOLDEN, #337160     *

Petition     *

v     *          Civil Action Case No. PJM-11-86

WARDEN BOBBY SHEARIN and     *
THE ATTORNEY GENERAL OF THE
STATE OF MARYLAND     *

Respondents     *
                  ***

## MEMORANDUM OPINION

Before the court is self-represented Petitioner David Davon Golden's ("Golden") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, challenging his conviction in the Circuit Court for Baltimore City, Maryland for first-degree assault and related offenses. ECF No. 1.[1] Respondents Bobby Shearin, Warden of North Branch Correctional Institution and Douglas Gansler, Attorney General of the State of Maryland, by their counsel, have filed a Response (ECF No. 11) to which Golden has filed a Reply. (ECF Nos. 24-31).[2] After reviewing the parties' submissions, including the transcripts of the underlying proceedings, the Court now rules, a hearing deemed unnecessary. *See* Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; Local Rule 105.6; *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (stating a petitioner not is entitled to a hearing under 28 U.S.C. § 2254 (e) (2)). For reasons set forth below, the Petition will be denied.

---

[1] On June 21, 2013, Golden substantially resubmitted his § 2254 Petition and exhibits. ECF No. 23.

[2] Mindful that Petitioner is a pro se litigant, this Court accords his pleadings liberal construction; thus, Golden's eleventh hour "Amended Petition" (ECF No. 34) will be considered as part of his reply.

# BACKGROUND

## A. Claims Presented

Golden presents the following claims for federal habeas corpus relief: 1) the prosecutor made improper comments during closing argument; 2) trial counsel provided ineffective assistance by failing to object to the prosecutor's improper comments during closing argument; and 3) the trial court abused its discretion by failing to issue a self-defense instruction based on the State's evidence. ECF No. 1.

## B. Trial

Golden was tried before a jury sitting in the Circuit Court for Baltimore City for the the attempted murders of Kobi Farmer, James Crawford, and Baltimore City Police Officer Marcus Simpson. Exhibit 13 at 3. The Court of Special Appeals of Maryland summarized the facts adduced at trial as follows:

> This case involves an incident that took place on August 14, 2003 in Baltimore City. The State's evidence showed that Baltimore City police officer Marcus Simpson was assisting police and fire fighters at the scene of a fire on East Durham Street. Simpson heard the sounds of gunfire coming from the 1600 block of East Durham, and he turned to look in that direction.

> As he looked toward the origin of the gunfire, Officer Simpson saw a man with his arm extended. The man was firing a handgun, and he saw a "muzzle flash" coming from the man. At the first shot, Simpson immediately ran toward the gunman, who in turn fled down the street. Simpson chased the gunman, closing to within fifteen to twenty feet from the gunman. The chase continued for several blocks until the gunman sat down on a step. When Simpson accosted the man, the gunman fired in the officer's direction but missed. He attempted to fire a second round at the policeman, but the weapon misfired. The weapon was, apparently out of ammunition, and the gunman threw it on the ground and fled.

> Simpson remained with the handgun until backup officers arrived. He then searched for the gunman and arrested him shortly thereafter. The

gunman was later identified as Golden. A second officer, Samuel Bowden, recovered five shell casings from the scene. Also recovered were a bullet fragment and a pair of jeans. The number of shell casings corresponded with the number of shots Simpson heard. The police also found a .380 caliber semiautomatic handgun approximately one and one-half blocks away near North Chapel Street. Forensic evidence established that the shells came from rounds that were fired by the handgun that was recovered from North Chapel Street.

One of the assault victims was Kobi Farmer. Farmer is an acquaintance of Golden, and had been prosecuted for shooting Golden during an incident on October 29, 2002. Twelve minutes of Farmer's testimony was not recorded, including all of the direct examination and a portion of cross-examination, and the trial judge reconstructed his testimony from contemporaneous notes. According to the trial judge's notes, Farmer recalled little of the events of that night. Farmer did remember that he was with a companion, James Crawford, when he was shot.

Although Farmer had previously been shown a photo array and had identified Golden as the gunman, he testified that he did not know his assailant. He told officers that "Bucket" was the name of his assailant. Farmer denied that he saw Golden on the night of the shooting. Farmer's testimony was vague, and he was not certain whether he might have been armed that evening. He testified on cross-examination that it was "possible" that he had been armed that night. He also admitted that he was in the area of North Durham Street that night "looking for trouble." He had also been threatening Golden because the latter would be testifying at Farmer's upcoming trial involving his assault against Golden on October 29, 2002.

There was testimony that gunshot residue was detected on both Farmer's and Golden's hands. As noted above, twelve minutes of Farmer's testimony was not recorded. The recording equipment began to function during Farmer's cross-examination:

BY [DEFENSE COUNSEL]:

Q — the specifics of what happened on the day that you were shot?

A  I mean, I remember some of the specifics. I know that I came around on Durham street, you know, looking for trouble that night, you know.

3

Q  Let me stop you there. When you say you were looking for trouble, isn't it true that on that day that you came to Durham Street, you had a .380 caliber handgun?

A  It's possible.

Q  Isn't it true that prior to the day of, the day when you were shot, that you were making threats to Mr. Golden regarding your upcoming trial?

A Yes, that's true.

Q You didn't want his testifying at that trial, did you?

A  No.

Q  And the day you were shot, it happened just a few weeks before you were scheduled to go to trial?

A  Correct.

Q  At some point, you learned that you had gunshot residue on your hands, correct?

A  Yes.

Q  On the night, the night that you got shot?

A  Right.

Q  Do you know how that got there?

A  I mean, I don't know for a fact, but, I mean, it could have been from a weapon that got fired. I —

[DEFENSE COUNSEL]: Your Honor, I have no further questions.

Golden testified on his behalf. He recalled that he was walking on Durham Street when he was approached by Farmer and Crawford. Farmer and Crawford "boxed [Golden] in" and threatened him about his testimony against Farmer in the trial involving the 2002 shooting. Golden said that Farmer was intoxicated, and that the confrontation began with "just a little bit of arguing[.]" Golden recounted that

the argument escalated and he sensed, judging from Farmer's posture and language, that he was going to pull out a handgun. According to Golden:

> A  Well, when he pulled out the weapon, out of fear, I guess, that's why I'm still here today, I rushed him. And when I rushed him, I'm not sure if — I'm not sure how the gun went off, but the gun went off. And we, like, tussling. And he falls back on the steps, and some kind of way I ended up with it. And —

> Q  What did you do when you ended up with the gun?

> A  Well, Mr. Crawford was grabbing me. And I'm like trying to get away from both of them. And another dude, I'm not sure what his name is, and I just turned around and, I guess used it.

> Q  When you say used it, you mean you —

> A  Well, Mr. Crawford was grabbing me. And I'm like trying to get away from both of them. And another dude, I'm not sure what his name is, and I just turned around and, I guess used it.

> Q  When you say used it, you mean you —

> A  As in I fired it.

> Q  What were you doing while you were firing the gun?

> A  I fired low just to stop them, really. But, and I was just running. He ripped me out of my shirt. I'm just running.

> Q  After the point ... when you were firing where Mr. Farmer and Mr. Crawford, were, after you ran from the scene, did you ever fire that weapon again?

> A  No, sir. I know all the shells was gone in front of them because I thought they were still going to shoot back. I thought they had another gun. And once, and I'm like running and — I I don't — it just I'm so — I'm under the pressure of, you know, my life about to be taken again. This guy [Farmer] had already shot me and left me dead, left me for dead once. He hit me in my face. I suppose it died.

***********

Q  Okay. And where did you get shot?

A  In the face, in the shoulder, and in the stomach.

Q  And did you know Mr. Crawford before that day?

A  No.

> Golden continued to fire until he ran out of bullets. He then fled the scene, running for two or three blocks before he threw the gun away in an alley. No one was following him, and he continued to walk away. Golden denied seeing Officer Simpson while he was running, and also denied firing a shot at him. He testified that, instead, when officers approached him, he did not resist and put his hands up.

ECF No. 11, Exhibit 9 at 2-6.

At the conclusion of the State's case, there was discussion as to whether Golden was entitled to a self-defense instruction based solely on the State's evidence, and the trial court ruled that the State's evidence did not support the instruction.  ECF No. 11, Exhibit 3 at 108-21. Golden later testified in the case.  After the close of evidence, the trial court instructed the jury on self-defense.  ECF No. 11, Exhibit 3 at 107-43; Exhibit 4 at 35-37.

Golden was found guilty of first-degree assault, use of a handgun in the commission of a felony, possession of a regulated firearm by a prohibited person, and unlawfully carrying a handgun in connection with the shooting of Kobi Farmer.  ECF No. 11, Exhibit 4 at 93-103. Golden was acquitted of all charges relating to James Crawford and Officer Marcus Simpson. On July 24, 2006, Golden was sentenced to serve a total of forty years imprisonment. ECF No. 11, Exhibit 5 at 14-17.

## C.  Appeal

Golden noted a direct appeal to the Court of Special Appeals of Maryland, raising the

following questions: 1) whether the trial court erred in ruling that the evidence did not generate the issue of self-defense, and whether the court's ruling compelled Golden to testify; 2) whether the record is sufficient to permit adequate review of the trial court's ruling on the issue of self-defense; 3) whether the trial court erred by permitting Golden to retain private counsel; 4) whether the prosecutor's cross-examination of Golden about a tattoo abridged his right to a fair trial; and 5) whether the trial court erred in its instructions to the jury. ECF No. 11, Exhibit 9 at 1; *see also* Exhibits 6-8.

On July 30, 2009, the Court of Special Appeals of Maryland affirmed Golden's conviction in an unreported decision. ECF No. 11, Exhibit 9. The Court of Appeals of Maryland denied Golden's Petition for Writ of Certiorari on December 11, 2009. ECF No. 11, Exhibits 10 and 11.

### D. Post-Conviction Proceedings

On July 16, 2010, Golden filed a Petition for Post-Conviction Relief in the Circuit Court for Baltimore City, raising claims of: 1) prosecutorial misconduct; 2) ineffective assistance of trial counsel; and 3) trial court error. ECF No. 11, Exhibit 12 and 13. On September 29-30, 2010, the Post-Conviction Court conducted a hearing on the claims raised in the Petition, and on October 15, 2010, granted Golden the right to file a belated motion for modification of sentence, but otherwise denied relief. ECF No. 11, Exhibit 1, Exhibit 13 at 5. On November 5, 2010, Golden filed a Motion to Alter or Amend Judgment the Post-Conviction Court's adverse rulings. That Motion was denied on December 1, 2010. ECF No. 11, Exhibit 1.

On November 29, 2010, Golden filed an Application for Leave to Appeal the Post-Conviction Court's adverse rulings, which the Circuit Court struck as untimely filed. ECF No.

11, Exhibits 1 & 14. Golden filed a second Application for Leave to Appeal to challenge the denial of his motion to Alter or Amend Judgment and/or the Circuit Court's ruling striking his Application for Leave to Appeal. At the time Golden filed his Petition for Writ of Certiorari, his second Application for Leave to Appeal was pending in the Court of Special Appeals as No. 2283 of the 2010 Term. ECF No. 11, Exhibit 15.[3] This second application was denied on April 8, 2013. ECF No. 23, Exhibit 1 at 19, 22-24. On May 20, 2013, Golden's Petition for a Writ of Certiorari was denied in the Court of Appeals as No. 549 of the September Term 2012. ECF No. 23, Exhibit 1 at 19.

## DISCUSSION

### A. Procedural Default

In reviewing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, a federal court must determine as a threshold matter whether the Petitioner has exhausted his claims before the appropriate state courts and whether those claims are barred by a procedural default. Absent valid excuse, a state petitioner "must have 'fairly presented' to the state courts the 'substance' of his federal habeas corpus claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 277–78 (1971)). A petitioner has the burden to prove exhaustion of state court remedies as to each claim presented for federal habeas relief. *See Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (omitting citations). If a state court expressly bases dismissal of a habeas claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the federal version of that habeas claim is

---

[3]  Golden requested that this Court stay and hold the Petition in abeyance while the state matter was pending, and this Court directed Respondent to file a response. ECF Nos. 16, 19, and 21. Petitioner's request to stay and hold this matter in abeyance was denied consonant with the considerations set forth in *Rhines v. Weber*, 544 U.S. 269, 277 (2005). ECF No. 22.

procedurally barred from review on the merits. *See id*. (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A state court's application of a procedural bar is a finding of fact entitled to the presumption of correctness. *See* 28 U.S.C. § 2254(d); *Stockton v. Murray*, 41 F.3d 920, 924 (4th Cir. 1994). A federal habeas court may review the merits of a procedurally defaulted claim only if a petitioner demonstrates cause [4] for the default and resulting prejudice or makes a colorable showing of actual innocence. *Breard*, 134 F.3d at 620. [5]

## B. Standard of Review

A federal court may "entertain an application for a writ of habeas corpus ... only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254. A court may grant federal habeas relief only if the state court's adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 403–13 (2000). Section 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7, (1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005). This

---

[4]   Generally, errors of counsel will not serve as cause to excuse a petitioner's procedural default of his claims. *See Coleman*, 501 U.S. at 752. In *Martinez v. Ryan*, _U.S._, 132 S.Ct. 1309, 1319-20 (2012), the Supreme Court established a "limited qualification" to the rule (holding that inadequate assistance of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."); *see also Trevino v. Thaler*, _U.S._,_, 133 S. Ct. 1911, 1918 (2013) (explaining the *Martinez* exception applies not only where a state requires a defendant to initially raise ineffective assistance of trial counsel in a state collateral proceeding but also when it is "virtually impossible" for the claim to be raised on direct review.). Golden does not claim ineffective assistance of post-conviction counsel as a "cause" for his procedural default. As noted, Golden raised a claim of prosecutorial misconduct and ineffective assistance in his Post-Conviction Petition.

[5] To the extent Petitioner makes an eleventh hour request to withdraw his procedurally defaulted claims and "resubmit a new habeas petition, same issue, and argument, without procedural default" his request lacks legal or factual merit. ECF No. 37. Petitioner does not explain how he would accomplish presenting the same claims so that they are not procedurally defaulted.

standard is "difficult to meet" and "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, __U.S. __, __, 131 S.Ct. 1388, 1398 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*). "State court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e) (1)). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e) (1)." *Id.* at 379 (quoting *Wilson v. Ozmint,* 352 F.3d 847, 858 (4th Cir. 2003)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S._, _, 131 S.Ct. 770, 786 (2011) (omitting internal quotations).

Under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's ... determination.' " *Id.* (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006)). A federal habeas court "may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Renico v. Lett,* 599 U.S. 766, 773 (2010) (quoting *William*s, 529 U.S. at 411) (internal marks omitted). "Rather, that application must be 'objectively

unreasonable.' " *Id*. (quoting *Williams*, 529 U.S. at 409). Petitioner's claims will be reviewed in light of these standards.

### C. Ineffective Assistance of Counsel

To establish a Sixth Amendment claim of ineffective assistance of counsel, "the defendant must show that counsel's performance was deficient," and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate inadequate or deficient performance under *Strickland*, a petitioner must "show that counsel's representation fell below an objective standard of reasonableness" measured by "prevailing professional norms." *Id*. at 688. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. A petitioner must overcome a presumption that "the challenged action 'might be considered sound trial strategy.' " *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Elmore v. Ozmint*, 661 F.3d 783, 857 (4th Cir. 2011) (quoting *Strickland*, 466 U.S. at 690–91).

To demonstrate prejudice under *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," i.e., that he would have been found not guilty. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the

outcome. It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' " *Harrington*, 131 S.Ct. at 787 (citation omitted) (quoting *Strickland*, 466 U.S. at 693). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' " *Harrington,* 131 S. Ct. at 787–88 (quoting *Strickland*, 466 U.S. at 687).  It is not enough to convince a federal habeas court that, in its independent judgment, the state court decision applied incorrectly; rather, a petitioner must show the state court applied *Strickland* to the facts in an objectively unreasonable manner. *See Bell*, 535 U.S. at 699.  Thus, in the context of § 2254 review, the *Strickland* standard is "doubly deferential." *Cullen*, 131 S.Ct. at 1403 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).  If it is clear that no prejudice resulted from the alleged error, a court need not make a determination concerning the attorney's performance. *See Strickland*, 466 U.S. at 697.

### D.  Analysis

#### 1.   Prosecutorial Misconduct and Ineffective Assistance of Counsel Claims

Golden claims the prosecutor improperly used the expression "don't snitch" and "alluded to facts not in evidence of settling disputes on the streets" to prejudice the jury against him, and faults his trial counsel for failing to object to these comments.  ECF No. 1 at 6-7; ECF No. 9 at 3; ECF No. 23 at 4.   In response, Respondents assert that because Golden failed to present his ineffective assistance of trial counsel and prosecutorial misconduct claims to all appropriate state courts, the claims are procedurally defaulted.  As earlier noted, Golden raised both claims in his Petition for Post-Conviction relief, and they were rejected by the state post-conviction court on their merits. ECF No. 11 at Exhibit 13. Golden's Application for Leave to Appeal the Post-

Conviction Court's decision was stricken by the Circuit Court as untimely filed. ECF No. 11, Exhibit 1. Under these circumstances, Golden has not fairly presented the substance of either claim before the state courts and they are procedurally defaulted.

Even were these claims to proceed, neither provides grounds to disturb the decision of the state court. The trial transcript indicates that during closing argument, the prosecutor used the term "don't snitch" to explain why Kobi Farmer did not identify Golden in court as the person who shot him. ECF No. 1 at 7-10; *see also* ECF No. 11, Exhibit 4. The prosecutor stated:

> You know what happened. Back in October 2002, Kobi Farmer shot David Golden. Before that case was getting ready to go to trial, David Golden decided, never mind, I don't want to go to court, I'll take care of it myself. David Golden shoots Kobi Farmer. He also ended up shooting James Crawford that night and shooting at Marcus Simpson.
>
> Then he goes to court. He has to go to court. They dragged him into court, just like you saw us drag Kobi Farmer in here today, or yesterday. You didn't want to see him. You saw him come here direct from the Division of Corrections [sic] wearing his DOC clothes and in his shackles. But David Golden goes to court for Kobi Farmer and says no, he didn't shoot me. Never mind the signed photo arrays, given statements he told the detectives, everything like that beforehand. He told you again when he got on the stand, yes. David Golden told you Kobi Farmer shot me, but I am not going to say it in court.
>
> Then you heard Kobi Farmer come in here. He said, yeah, I was out there, I got shot. I don't know who shot me. David Golden didn't shoot me. Simple rules ladies and gentlemen. Don't snitch. That's what happened.
>
> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
>
> You can handle it yourself. You can deal with it some other way. You can say it happened some other time. But when it comes into getting into a courtroom in front of 12 people like you, ladies and gentlemen, different rules apply. And it was, don't snitch. And you saw it from Kobi Farmer, and you saw it from David Golden.

ECF No. 11, Exhibit 4 at 49-50.

In denying Golden's claim of prosecutorial misconduct, the Post-Conviction Court stated:

The Petitioner alleged that his 6th amendment right to a fair and impartial trial was violated due to various instances of prosecutorial misconduct on the part of Assistant State's Attorney Grant McDaniel. The Supreme Court has recognized that prosecutorial misconduct may be "of sufficient significance to result in the denial of the defendant's right to a fair trial." *United States v. Bagley*, 473 U.S. 667, 676 (1985) (quoting *United States v. Agurs*, 427 U.S. 97, 108 (1976)). A defendant in a criminal case has a right to a fair trial. *Johnson v. State*, 352 Md. 374, 385 (1999) [footnote omitted]. The Fourteenth Amendment of the Federal Constitution compels the States to afford an accused "due process of law." There is, however, no mandate that the trial be perfect. *Shotkosky v. State*, 8 Md. App. 492, 505 (1970). A cardinal element of fairness and impartiality is that the conviction be based upon evidence legally before the trier of fact and that evidence be legally sufficient to sustain the conviction. *Burnett v. State*, 11 Md. App. 550, 554-55 (1971) (quoting *Commonwealth v. Bird*, 33 A.2d 531, 534 (Pa. 1943)).

*****************************

Second, the Petitioner alleges that the Prosecutor's use of the expression "don't snitch" prejudiced him to the jury. In *Lawson v. State*, the Court remarked that "[t]here is no doubt that, in the heat of argument, counsel do occasionally make remarks that are not justified by the testimony, and which are, or may be prejudicial to the accused." *Lawson v. State*, 389 Md. 570, 589 (2006) (quoting *Dunlop v. United States*, 165 U.S. 486, 498 (1897). In addition, mistrials for improper remarks in closing arguments are only required when the remarks ["] actually misled the jury, [or] were likely to have misled the jury, or influenced the jury to the prejudice of the accused." *Washington v. State,* 191 Md. App. 48 (citing *Lee v State*, 405 Md. 148, 164) (quoting *Lawson v. State*, 389 Md. at 592).

*****************************

The burden of proving the allegation is upon the Petitioner. *State v. Hardy,* 2 Md. App. 150, 156 (1967). It follows that the Petitioner must prove facts to establish his allegation. *Cirincione v. State*, 119 Md. App. 472, 504 cert. denied, 350 Md. 275 (1998). If the Petitioner fails to prove the required facts, the allegation may be denied for the reason that it is a bald allegation. *Duff v. Warden*, 234 Md. 646, 648 (1964).

 In the Petition, the Petitioner does not state with clarity either the exculpatory evidence he is referring to or the Prosecutor's manner that he finds objectionable as a matter of law. During his testimony before this Court, the Petitioner failed to provide any facts or evidence to support his allegation. As such, this Court finds the Petitioner's allegation should be denied.

ECF No. 11, Exhibit 13 at 8-10.

A prosecutor's improper closing argument may 'so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process.' " *United States v. Lighty*, 616 F.3d 321, 359 (4th Cir.2010) (quoting United *States v. Wilson*, 135 F.3d 291, 297 (4th Cir.1998)). The prosecutor's comments at Golden's trial were isolated, consisting of a few lines during closing argument following a four-day jury trial, with nothing in the record to suggest that they were deliberately articulated to divert jury attention or inflame jury passions. ECF No. 11, Exhibits 2-5. It is important to note too, that substantial credible evidence of Golden's guilt was adduced at trial. Specifically, Golden admitted firing a handgun at Crawford and Farmer, Officer Simpson observed Golden firing a weapon, and Farmer had identified Golden prior to trial as the shooter. ECF No. 11, Exhibit 3 at 126-27, 130-131, 54, 59, 87. The state court's determination is entitled to deference on federal habeas review. *See Williams*, 529 U.S. at 412–13.

Golden also generally claims without providing specific factual support, that the "cumulative affect" [sic] of the prosecutor's remarks and counsel's alleged ineffective assistance amount to denial of a fair trial. ECF No. 1 at 8, 11. Under the doctrine of cumulative error, "[t]he cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir.1990); *see also United States v. Martinez*, 277 F.3d 517, 532 (4th Cir.2002) (citing *Rivera* for the same proposition); *United States v. Basham*, 561 F.3d 302, 330 (4th Cir.2009). Generally, if a court "determine [s] ... that none of [a defendant's] claims warrant reversal individually," it will "decline to employ the unusual remedy of reversing for cumulative error." *United States v. Fields*, 483 F.3d 313, 362 (5th Cir. 2007). To reverse for cumulative

error, the errors must "so fatally infect the trial that they violated the trial's fundamental fairness." *Basham*, 561 F.3d at 330 (quoting *United States v. Bell*, 367 F.3d 452, 471 (5th Cir.2004)). When "[n]one of [the trial court's] individual rulings worked any cognizable harm to [the defendant's] rights ... [i]t necessarily follows that the cumulative error doctrine finds no foothold[.]" *United States v. Sampson*, 486 F.3d 13, 51 (1st Cir. 2007). In the Fourth Circuit, the cumulative error doctrine is not generally recognized because "legitimate cumulative-error analysis evaluates only the effect of matters actually determined to be constitutional error, not the cumulative effect of all of counsel's actions deemed deficient." *Fisher v. Angelone*, 163 F.3d 835, 852 n. 9. (4th Cir.1998); *see also Arnold v. Evatt*, 113 F.3d 1352, 1364 (4th Cir. 1997); *Higgs v. United States,* 711 F.Supp.2d 479, 552 (D. Md. 2010) (in the context of collateral review, relief based on the cumulative effect of errors is available only where individual constitutional errors are found). Petitioner does not demonstrate the state court's adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C § 2254(d). For this reason, even were these claims not procedurally defaulted, they would provide no grounds for federal habeas corpus relief.

### 2. Trial Court Error Claim

Golden next claims the trial court abused its discretion by declining to give a self-defense instruction at the close of the State's evidence. Golden explains this ruling caused him to "change his mind and waive his United State[s] Constitutional 5th Amendment right not to testify." ECF No. 1 at 10. Respondents argue this claim is not cognizable on federal habeas

review because neither in state court nor here has Golden alleged that the trial court's action or inaction constituted a violation of constitutional or federal law.

Golden's reference to the impact the court's ruling had on his decision to testify in the case relates solely to the harm caused by the alleged error. Neither in state court nor in this Petition has Golden alleged a separate claim that the state court engaged in an action that in and of itself violated his constitutional rights. *See* 28 U.S.C. § 2254(a); *see also Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (explaining that "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States"). Accordingly, this claim fails to state a cognizable claim on federal habeas review.

It bears noting that the Court of Special Appeals of Maryland rejected this claim on direct appeal, stating:

> Golden first argues that the trial court erred by finding that the State's evidence did not generate the issue of self-defense. He complains that the trial judge's erroneous determination virtually compelled him to testify in order to create a record to enable him to substantiate his "self-defense" theory. We disagree and explain.
>
> Md. Rule 4-325 pertains to jury instructions in criminal matters. That rule relevantly provides:
>
>> The court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding. The court need not grant a requested instruction if the matter is fairly covered by instructions actually given.
>
> Md. Rule 4-325(c).
>
>          \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
>
> The determination of whether the record contains some evidence that is sufficient to require a requested instruction is a question of law for the trial court. *Roach v. State*, 358 Md, 418, 428 (2000). *In Roach*, the Court of Appeals articulated the "some evidence" test:

Some evidence is not strictured by the test of a specific standard. It calls for no more than what it says—"some," as that word is understood in common, every day usage. It need not rise to the level of "beyond reasonable doubt" or "clear and convincing" or "preponderance." The source of the evidence is immaterial; it may emanate solely from the defendant.

*Roach*, 358 Md. at 428 (quoting *Dykes v. State*, 319 Md. 206, 216-17 (1990)).

The question of whether there is sufficient evidence to generate an instruction is a question of law for the trial judge. *Marquardt v. State*, 164 Md. App. 95, 131 (quoting *Roach*, 358 Md. at 428). Our review of this legal determination is plenary.

The elements of self-defense in Maryland have been set forth as follows:

> (1) The accused must have had reasonable grounds to believe himself in apparent imminent or immediate danger of death or serious bodily harm from his assailant or potential assailant;
>
> (2) The accused must have in fact believed himself in this danger;
>
> (3) The accused claiming the right of self-defense must not have been the aggressor or provoked the conflict; and
>
> (4) The force used must not have been unreasonable and excessive, that is, the force must not have been more force than the exigency demanded.

*Christian v. State*, 405 Md. 306, 324 n. 14 (2008) (quoting *State v. Faulkner*, 301 Md. 482, 485-86 (1984)). Perfect self-defense "requires not only that the [assailant] subjectively believed that his actions were necessary for his safety, but, objectively, that a reasonable man would so consider them." *Christian*, 406 Md. at 324 (citation omitted).

The defense of self-defense requires an "actual belief" that safe retreat is not possible.[6]

*****************

Golden claims that the prosecution's evidence justifies an instruction on self-defense because the record shows that Farmer had shot Golden in the past and had threatened Golden in the past about the latter's anticipated

---

[6] The Court of Special Appeals examined Golden's claim in the context of both perfect and imperfect self-defense. ECF No. 11, Exhibit 9 n. 2 and at 7-10.

testimony against him. Farmer came to the North Durham Street area "looking for trouble" while armed with a handgun and had gunshot residue on his hands; and that Farmer was accompanied by another person, Crawford. Based on these facts and the inferences that could have been drawn from them, Golden maintains that the "jury could have found that at the time he shot at Farmer [he] subjectively and reasonably believed that he was in imminent danger of death or serious bodily harm [and that] the force used by [him] was not excessive under the circumstances."

We conclude that the evidence does not generate the issue of self-defense. There is no evidence from which the jury could infer that Farmer had threatened Golden during the pertinent time period. Although twelve minutes of Farmer's testimony was lost and had to be reconstructed, it is significant that the trial judge did not recall that Farmer admitted to brandishing a handgun and threatening Golden. The trial judge's notes instead reflect that Farmer denied seeing Golden that evening, that he did not know the type of handgun that was used, and only that he suggested that he carried a handgun that evening. Further, there is no evidence that would support the inference that Golden was foreclosed either from retreating or using a level of force that was reasonable under the circumstances. Officer Simpson recalled that the gunman fired numerous times, and that his arm was extended as he fired the handgun.

We recognize that the evidentiary threshold for generating a jury instruction is minimal. A "defendant is entitled to have the jury instructed on any theory of the defense that is fairly supported by the evidence." *Brogden v. State*, 384 Md. 631, 650 (2005) (quoting *Fleming v. State*, 373 Md. 426, 432(2003)); *State v. Latham,* 182 Md. App. 597, 619 (2008). It is not necessary that this evidence be uncontradicted. Judge Orth stated for the Court of Appeals in *Dykes v. State*, 319 Md. 206 (1990) that:

> Some evidence is not structured by the test of a specific standard. It calls for no more than what it says -- "some," as that word is understood in common, everyday usage. It need not rise to the level of "beyond reasonable doubt" or "clear and convincing" or "preponderance." The source of the evidence is immaterial; it may emanate solely from the defendant. It is of no matter that these [sic] defense claim is overwhelmed by evidence to the contrary. If there is any evidence relied on by the defendant which, if believed, would support his claim that he acted in self-defense, the defendant has met his burden. Then the baton is passed to the State. It must shoulder the burden of proving beyond a

> reasonable doubt to the satisfaction of the July [sic] that the
> defendant did not kill in self-defense.

*Dyke*s, 319 Md. at 217.

Nevertheless, on the basis of the prosecution's evidence alone, an instruction on self-defense is not "fairly supported by the record" Assuming as true that Farmer was armed, came to the area "looking for trouble," and had gunshot residue on his hands, and taking as fact that he had threatened Golden in the past in anticipation of the latter's testimony against him, there is no support for the inference that Golden was "entitled to take some action against [Farmer]." There was no evidence that, at the time of the shooting, Farmer was doing anything that would have led a reasonable person to believe that Farmer posed an imminent danger of any injury. *See Peterson v. State*, 101 Md. App. 153, 159, cert. denied, 336 Md. 559 (1994). There is no evidence that Farmer assaulted Golden or threatened him on the night of the shooting.

Moreover, there is no evidence produced in the State's case-in-chief as to Golden's state of mind, whether his objective belief that he feared for his life and that no avenue of safe retreat was available. Certainly, it is not required that the defendant testify to establish his state of mind. *See State v. Martin*, 329 Md. 351, 361-62 (1993). Yet, "[o]nly if the record reflects, from whatever source, that, at that time, the defendant subjectively believed that he or she was in imminent danger of death or great bodily harm could the issue be generated." *Id.*, 329 Md. at 363.

ECF No. 11, Exhibit 9 at 6-12.

Even if this claim had been cognizable on habeas review, it provides no grounds for

habeas relief. The intermediate appellate court's determination that the State's evidence did not

generate a claim that Golden acted in self-defense is supported by the record. Golden, after

consulting with counsel and having been advised by the court of the possible implications of his

testimony, elected to testify to generate the issue of self-defense after it was determined not to

have been generated by the State's evidence. ECF No. 11, Exhibit 3 at 121-24. The decision

whether to testify was Golden's to make. *See Harris v. New York*, 401 U.S. 222, 230 (1971)

(recognizing that a criminal defendant is privileged to testify in his defense or refuse to do so);

*see also Rock v. Arkansas*, 483 U.S. 44, 49-53 (1987) (recognizing defendant has choice whether to testify or not testify).  The state court's adjudication was neither "contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C § 2254(d).

## CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)) or that "the issues presented were 'adequate to deserve encouragement to proceed further.' " *Miller-El v. Cockrell,* 537 U.S. 322 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983). Petitioner has failed to meet this standard and a Certificate of Appealability shall not issue.

## CONCLUSION

For these reasons, the Petition provides no grounds to award habeas corpus relief and it will be DENIED and DISMISSED by separate Order.

_____/s/_____

PETER J. MESSITTE

UNITED STATES DISTRICT JUDGE

October 28, 2013